# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

NATALIE and MARK KOEHLER,

        Plaintiffs,

    v.                                Case No. 06-C-0233

METROPOLITAN LIFE
INSURANCE COMPANY,

        Defendant.

---

## DECISION AND ORDER

---

The Plaintiffs, Natalie and Mark Koehler (the "Koehlers"), filed suit against

Metropolitan Life Insurance Company ("MetLife") in Milwaukee County Circuit Court

alleging a violation of the Employee Retirement Income Security Act of 1974 ("ERISA").[1]

On February 24, 2006, MetLife filed a Notice of Removal. MetLife's motion for summary

judgment is now pending before the Court.

## BACKGROUND

Mark Koehler enrolled his wife, Natalie, in the General Electric Personal

Accident Insurance Plan (the "Plan") sponsored by General Electric for eligible employees

and their family members. (DPFF ¶¶ 6-8.) MetLife is the claim fiduciary of the Plan and

has discretionary authority to interpret its provisions. (DPFF ¶¶ 8, 11-12.)

---

[1] The Koehlers also raised state law claims of breach of contract, breach of fiduciary duties, and a claim pursuant to Wis. Stat. § 628.46. ERISA preempts those claims. *Rud v. Liberty Life Assurance Co.*, 438 F.3d 772, 777 (7th Cir. 2006) ("A suit to enforce a claim for benefits under an ERISA plan can be brought only under ERISA; parallel state law remedies are preempted.")

On November 14, 1990, Natalie Koehler ("Mrs. Koehler") injured her left foot by dropping a coffee cup that severed the tendons and caused nerve damage in her left foot. (Plaintiffs' Response to Defendant's Proposed Findings of Fact ["PRDPFF"] ¶ 13.)  Nearly fourteen years later, on August 18, 2004, the Koehlers submitted a claim to MetLife for benefits under the Plan for the injury she sustained.  According to the Plan, Mrs. Koehler is entitled to benefits if she suffered the "permanent and total loss of function" of her left foot.  (DPFF ¶ 12.)

In support of their claim, the Koehlers submitted a medical report dated November 18, 1999, which stated Mrs. Koehler's "only operative intervention would be a below the knee amputation."  (Plaintiff's Proposed Findings of Fact "PPFF" ¶ 11.) MetLife requested more recent medical records (PRDFF ¶¶ 18-23), so Mrs. Koehler met with Dr. Mysore Shivaram on August 27, 2004.  (DPFF ¶ 24.)  Dr. Shivaram issued a report stating that Mrs. Koehler uses a foot drop brace and cane and that he expects no future improvement in her condition. (DPFF ¶¶ 24-26.)  Dr. Shivaram also stated that Mrs. Koehler could not voluntarily dorsi-flex her left ankle and foot and had poor sensation in her left leg and foot.  (PPFF ¶ 11.)  Despite these limitations, Dr. Shivaram also reported:

> At present, she can continue activities as she tolerates.  At present, she has difficulty in walking for more than 10-15 minutes at a time.  She also has difficulty getting into the shower.  I would encourage her to continue the activities as she tolerates as she has been performing at this stage and continue exercising to maintain the strength in the lower extremity as well as upper extremities.

(*Id.*)

After receiving Dr. Shivaram's report, MetLife asked Dr. Harry Stanger to review the records to determine whether Mrs. Koehler met the Plan's requirement of a permanent and total loss of function of her foot. (*Id.* ¶ 1.) Dr. Stanger concluded that Mrs. Koehler did not meet that requirement. (PRDPPF ¶¶ 28-31.) In support of his conclusion, he noted that the records indicated that Mrs. Koehler could not dorsi-flex, or extend her foot upward, but nothing showed that she could not plantar-flex, or press her foot downward. (*Id.*)

MetLife denied the Koehlers' claim on October 5, 2004. (PPFF ¶ 3.) In its denial letter, MetLife said Mrs. Koehler did not experience a permanent and total loss of function of her foot because she retained function through use of a foot brace and cane. (DDPP ¶ 36.) The letter also said that Mrs. Koehler can walk for ten to fifteen minutes at a time, and her activities are not restricted. (*Id.*)

The Koehlers appealed the decision relying on a letter from Dr. Shivaram that stated that Mrs. Koehler has a "permanent and total loss of function of the left foot." (PPFF ¶¶ 6-7.) MetLife requested a complete medical history of the injury, including documentation from Dr. Shivaram to support his opinion. (DPFF ¶ 40.) The Koehlers submitted more than 600 pages of records on August 29, 2005. (PPFF ¶ 10.)

The records consisted primarily of documentation about the various surgeries to Mrs. Koehler's left foot but did not include any more records from Dr. Shivaram. (*Id.* ¶ 11.) A record from Dr. Michelle Sadowski-Johnson dated June 10, 2002, stated that Mrs. Koehler "pretty much cannot weight bear." (*Id.* ¶ 18.) Another record from Dr. Sadowski-

3

Johnson dated March 31, 2003, noted that Mrs. Koehler's foot had no flexion or extension

and is caught "pretty much in the 90 degree position." (*Id.* ¶ 15.) MetLife did not have Dr.

Stranger or another doctor review these additional records. (*Id.* ¶¶ 23.)

On October 25, 2005, MetLife denied the Koehlers' appeal. (PPFF ¶ 23.) In its

denial letter, MetLife stated that the records indicated that Mrs. Koehler retains function of

her left foot through the use of a brace and cane, and she can walk for up to fifteen minutes

at a time. (DPFF ¶ 47.) It also cited an evaluation by Dr. Michael Baumblatt from August

25, 1993, that concluded that Mrs. Koehler had no postural limitations and had the capacity

to push and pull with the use of foot controls. (*Id.*) Another report from Dr. John Gould

dated April 3, 1993, stated that Mrs. Koehler's left ankle retained sufficient range of

motion to complete activities without restrictions. (*Id.*)

The Koehlers then initiated this lawsuit alleging that MetLife arbitrarily and

capriciously denied the Koehlers's claim for benefits in violation of ERISA, 29 U.S.C. §§

1132(a)(1)(B) & 1132(a)(3).

**STANDARD OF REVIEW**

A court will grant summary judgment if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with any affidavits, show that there is no

genuine issue of material fact and that the movant is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

moving party bears the initial burden of demonstrating the absence of any genuine issue of

material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the

4

Court takes all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden, the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

## DISCUSSION

When an ERISA plan gives the plan administrator discretion to interpret the plan and determine eligibility, the Court must review the administrator's decision under the deferential arbitrary and capricious standard. *Houston v. Provident Life & Accident Ins. Co.*, 390 F.3d 990, 995 (7th Cir. 2004). Under this standard, a plan administrator's decision "prevails if it has rational support in the record." *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004). A plaintiff is not entitled to a reversal of a decision simply by raising "debatable points," *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 701 (7th Cir. 2005), but instead the plaintiff must show that the decision was "downright unreasonable." *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) (*quoting Sisto*, 429 F.3d at 700).

The Plan entitles Mrs. Koehler to accident benefits only if she suffered "permanent and total loss of function" of her foot. The Koehlers argue that her injury met that requirement because her foot has no feeling, has limited weight-bearing ability, and cannot move. They rely on Dr. Sadowski-Johnson's two reports that indicate that Mrs. Koehler "pretty much" cannot bear weight and that her ankle is locked in the ninety-degree position. They also point to Dr. Shivaram's report from November 5, 2004, that states that Mrs. Koehler lost permanent and total function of her foot.

The evidence that the Koehlers cite, though, does not demonstrate that MetLife's denial of their claim was "downright unreasonable." Some of the medical records suggest Mrs. Koehler's foot maintains some weight-bearing ability and sensory feeling, and that she was not restricted in many of her activities. For instance, Dr. Shivaram reported on August 27, 2004, that Mrs. Koehler can walk for ten to fifteen minutes and maintains some, if poor, sensory feeling in her left foot. In addition, Dr. Ward Jankus' report suggested that Mrs. Koehler can bear weight for about an hour. MetLife also reasonably discounted Dr. Sadowski-Johnson's reports because Mrs. Koehler visited Dr. Sadowski-Johnson to discuss concerns about her weight, not to examine her foot. MetLife's denial of the Koehlers' claim, therefore, was reasonable and in accord with much of the medical evidence.

The Koehlers also argue that the process MetLife used in making its decision was arbitrary and capricious because it overlooked key evidence and conducted a selective review of the medical records. Specifically, the Koehlers contend that MetLife failed to

6

have Dr. Stanger review Dr. Sadowski-Johnson's two reports and Dr. Shivaram's November report.

The Koehlers' argument is unavailing. As mentioned above, Mrs. Koehler did not visit Dr. Sadowski-Johnson to examine her foot, but rather to discuss concerns about her weight. MetLife reasonably concluded that Dr. Sadowski-Johnson's statements about Mrs. Koehler's foot likely came from Mrs. Koehler herself, and thus, were not objective evidence that Dr. Stranger needed to assess. Furthermore, Dr. Shivaram's November report was not objective evidence because Dr. Shivaram's opinion was not based on any cited evaluation or medical evidence, and it was issued soon after MetLife initially denied Mrs. Koehler's claim.

In its letter denying the Koehlers' appeal, MetLife stated that it had reviewed "the entire claim file, including examination of additional material and information provided." (DPFF ¶ 47.) The Koehlers submit no evidence to suggest otherwise. MetLife did not act arbitrarily or capriciously in denying their claim, so its motion for summary judgment is granted.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

MetLife's Motion for Summary Judgment (Docket No. 25) is **GRANTED**.

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of July, 2007.

                                        **BY THE COURT**

                                        s/ Rudolph T. Randa

                                        **Hon. Rudolph T. Randa**
                                        **Chief Judge**